## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CASE NO. 1:17-CR-076 (2)** |
| **Plaintiff,** | **JUDGE BARRETT** |
| **vs.** | **DEFENDANT'S SENTENCING** |
| **MEAH VIRGE,** | **MEMORANDUM** |
| **Defendant.** | |

Now comes Defendant, Meah Virge, by and through the undersigned counsel, and submits the following memorandum for the Court's consideration of a 17-month sentence.

Meah Virge has been involved in a series of unhealthy and dangerous relationships. Donald Hope, her co-defendant, was no different than any other man in Meah's life. Mr. Hope was physically and emotionally abusive to Meah, he put a gun to her head on several occasions, he physically fought with her, and Mercy Hospital records verify Meah suffered a pneumothorax after Mr. Hope kicked her in the ribs. Just six months before her arrest, in October of 2016, police were called to the home after Mr. Hope punched Meah in the back of her head.

For Meah, abuse was a way of life. Meah's mother began to abuse heroin and crack cocaine when she was a child. At the age of 10, Meah's mother moved the family in with a new boyfriend who physically abused them, including a time he kicked Meah in the teeth knocking out her tooth. The boyfriend molested multiple family members, including Meah. She was also a witness to their continued drug use. As a young teenager, Meah would escape the abuse by running away from home. At the age of 17, she was raped by the family member of a friend while staying at their house for a weekend. Meah was

involved in abusive relationships with her childrens' fathers, which included a beating with a whiffle ball bat while she was pregnant. Meah has also experienced great tragedy. She lost two of her sisters at a young age: one at age 20 and the other at age 14. Meah's mother passed away at age 46.

On April 13, 2017, Donald and Meah had been fighting all day. Donald took her car keys and insisted on leaving to meet CS. In an attempt to prevent his return to the home, Meah stated she would meet CS; over the years Meah learned to deescalate confrontations. Her involvement in this case stems from that one delivery of .0685 grams of heroin cocaine. Days later, when a search warrant was served on her home, officers found no drugs or weapons. The only trace of an illegal substance was heroin cocaine residue found on a plate and razorblade. Notably, the heroin cocaine mixture did not contain fentanyl, carfentanyl, or any synthetic opioid.

When CS was admitted to Mercy Hospital on March 26, 2017 for a heroin overdose, she reported "she doesn't want to live anymore. [S]he once overdosed on pills to kill herself. [S]he attempted suicide in the past by overdosing." (Mercy West Hospital Records). After repeating she was suicidal, the physician completed an application for emergency admission, and CS was placed at Clermont Psychiatric Facility. *Id.* It was noted she had a history of prior suicide attempts, pre-existing seizures, drug abuse and depression. *Id.* In response to screening questions, CS stated she had harbored thoughts of killing herself and attempted suicide four months prior. *Id.* She also stated that within the past month she started to work out details and form a plan for committing suicide and decided it would be done by heroin overdose. *Id.*

When CS was interviewed by Hamilton County Task Force Officers, she stated she purchased her heroin from "Don" for the past five months. She provided his physical description, his cell phone number, the make of his car, that he provided a syringe with the sale, and the details of their meet-ups. (Hamilton County Heroin Coalition Task Force Investigative Report). CS also described the details of the purchase on the day of the overdose, including the amount, the time, and where and when it was used. *Id*. All communications were made between CS and Donald Hope. CS made no mention of Meah Virge. In April of 2017, CS worked with Task Force Officers to make four controlled buys from Donald Hope. The officers first became aware of Meah Virge when she made the April 13th delivery, a month after the overdose. All of the facts in this case support a downward variance from the recommended Sentencing Guidelines range.

### A. Meah Virge is substantially less culpable than Donald Hope and should be granted a four-level reduction in her offense level for a mitigating role.

Meah Virge should be granted a four-level reduction in her offense level based on the mitigating role she played in the offense. The Sixth Circuit has held that "downward departures under §3B1.2 are available only to a party who is 'less culpable than most other participants' and 'substantially less culpable than the average participant.'" *United States v. Campbell*, 279 F.3d 392, 396 (6th Cir. 2002) *quoting United States v. Lloyd*, 10 F.3d 1197, 1220 (6th Cir. 1993). Meah fits this category, and her offense level should be reduced accordingly. Section 3B1.2 provides for a range of decreases from two to four levels for a defendant who plays a part in committing the offense that makes her substantially less culpable than the average participant. USSG §3B1.2, comment. (n. 3(A)). The determination whether to apply subsection (a) or subsection (b), or an intermediate

adjustment, is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the case." USSG §3B1.2, comment. (n.3(C)).

Meah is substantially less culpable for CS's overdose than Mr. Hope. She stipulated to a Statement of Facts in her Plea Agreement that Mr. Hope sold the substance that caused CS to overdose. Out of the four undercover buys, Meah was only present for one sale and the amount of the sale was just over a half of a gram. When CS was questioned about her drug purchases, she went into great detail to describe Mr. Hope. Meah was never the point of contact. But for that one delivery on April 13th, a month after the overdose, she would likely not be a defendant. At most, the search warrant recovered a plate with heroin cocaine residue. Although she admitted to knowing that Mr. Hope sold drugs, she told officers on the day of her arrest that she was afraid to leave the relationship. In comparison to Mr. Hope's actions, Meah is substantially less culpable and should be given a four-level reduction for her mitigating role.

**B. The final PSR's calculation of Meah's criminal history category over-represents the seriousness of her past criminal conduct and her propensity to commit crimes.**

Meah has no prior drug possession or trafficking offense other than the state court indictment that was dismissed in relation to this case. Meah's criminal history over the past 20 years appears to be lengthy in the PSR, but consists of misdemeanor offenses, including several thefts for small dollar amounts, disorderly conducts, falsification, and inducing panic. Her 2010 domestic violence conviction stems from an incident involving a physical altercation with the father of her youngest child. Meah has several traffic offenses over the years as well, but more importantly, she has no prior felony convictions.

Meah's criminal history calculation should be 11, and not 12, as contained in the PSR for several reasons:

1. The 2011 and 2012 thefts contained in ¶¶ 76 and 77 of the PSR received 4 criminal history points. Meah did not serve jail time for these offenses and was permitted to complete work detail.[1]  It should be noted the theft amounted to $49.00 in merchandise.

2. The 2012 unauthorized use of property in ¶ 80 of the PSR received 1 criminal history point. Meah did not serve jail time for these offenses and was permitted to complete work detail.[1]

3. The 2013 theft contained in ¶ 81 of the PSR received 2 criminal history points. Meah was sentenced to 180 days in jail with 150 days suspended for a total of 30 days in jail; therefore, this sentence should only receive 1 criminal history point.  It should also be noted the theft amounted to $46.00 in merchandise.

In *United States v. Collington*, 462 F.3d 805, 806 (6th Cir. 2006), the defendant plead guilty to drug and firearm offenses. The district court determined that the defendant's offense level was thirty-three and his criminal history category was IV, resulting in a recommended range of 188-235 months. *Id.*  The district court varied down to the mandatory minimum sentence based, in part, on the grounds that the defendant's criminal history was over-represented and that the defendant had never been in custody for a substantial period.  The government appealed the sentence, but the Sixth Circuit affirmed the reasonableness of the district court's sentence.

---

[1] Counsel was unable to retrieve the work detail records through public records and a subpoena was required to obtain the records from the Hamilton County Justice Center. As of the date of this memo, they have not been received.

Meah has never been incarcerated for a substantial amount of time. Her misdemeanor offenses have resulted in a maximum of 90 days incarceration. She has presently been incarcerated since June 26, 2017, approximately 19 months, a much longer sentence than she has ever served. Based on her lack of a felony record and absence of any drug possession or trafficking offense, Defendant requests the court vary from the Guidelines and sentence her as though she were in criminal history category III.

### C. The Court should consider a variance from the Guidelines to prevent Meah's four children from being permanently separated from one another.

When Meah was incarcerated in June of 2017, Hamilton County Job and Family Services placed each of her children in four different homes. Janaya Jackson, her 17-year-old daughter, lives with a friend. Jayon Jackson, her 16-year-old daughter, lives with her sister, Quiana Gentry. Armani Lane, her 11-year-old daughter, lives with a different sister, Michelle Thompson. Armand Lane, her 8-year-old son, lives with his father. All of the children are now being raised in homes with other children where finances are tight. All of the caretakers live in different school districts. Because Meah is being housed in Butler County, it is difficult for the children to visit their mother.

A longer sentence of incarceration will most likely result in the permanent separation of Meah's children. According to leading researchers on the sibling bond: "[S]ibling relationships validate the child's fundamental worth as a human being [and] produce hope and motivation." Mary Anne Herrick & Wendy Piccus, *Sibling Connections: The Importance of Nurturing Sibling Bonds in the Foster Care System*, 27 Children and Youth Services Review 845, 849 (2005). Siblings also play a crucial role in the development of one's identity and self-esteem. *Id.* Additionally, girls placed into

foster care who are separated from their siblings are reported to have significantly poorer mental health and socialization than girls residing with at least one sibling.  A. Schlonsky, *Children and Youth Services Review: The Mental Health and Socialization of Children in Care*, Volume 27, Issue 7 (2005).  Apart from the adverse effect that imprisonment has on children, a mother's concern for her children may have an effect on her own recidivism. Professor Norma Demleitner has noted that:

> Existing data indicate that women's lower recidivism rate may be connected to their family and childcare responsibilities…Since many of the offenders with young children also constitute lower recidivism risks in light of their offense of conviction and their prior criminal records, sentencing judges should at least be allowed to consider the impact of a prison sentence on families and minor children.

*Smart Public Policy: Replacing Imprisonment with Targeted Non-Prison Sentences and Collateral Sanctions*, 58 Stan. L. Rev. 339, 352 (2005).

Prior to her incarceration, Meah was the sole provider for her children. Meah's mother is deceased, her father does not live in Cincinnati, and two of the three fathers have not been involved in their children's live's.  Meah's youngest son has been placed with his father who has no connection to her family.  The three oldest daughters are not only living apart, but risk losing their bond with their youngest sibling.  By all accounts the children had no forewarning their mother was facing incarceration. There is no evidence that Meah's actions posed a danger to her children.  The drug transaction was not conducted in the home.  No drugs were found in the home.  The children were not present at the controlled buy.  A variance from the Guidelines of 17-months would prevent a family tragedy.

**D. The sentencing factors under 18 U.S.C. §3553(a) favor imposition of a sentence below the guidelines.**

Defendant asks the Court to consider the time she was held on the related state charges in fashioning her sentence. On the date of sentencing, Meah will have been incarcerated for over 19 months. She was arrested in Hamilton County for the same underlying facts in this case on June 26, 2017. She was arrested on the federal indictment and transferred to federal custody on August 16, 2017. The two months incarceration time should be considered in her sentence.

Second, Defendant asks the Court to consider a variance from the Guidelines based on her being 38 years of age. Older offenders are substantially less likely than younger offenders to recidivate following release. The United States Sentencing Commission. *The Effects of Aging on Recidivism Among Federal Offenders*. Key Findings. December 2017. According to the commission, age exerted a strong influence on recidivism across all sentence length categories. *Id.* "Older offenders were less likely to recidivate after release than younger offenders who had served similar sentences, regardless of the length of sentence imposed." *Id.*

The Court should also consider a variance from the Guidelines based on Meah's history. As reflected in the PSR, Meah suffered physical, verbal and sexual abuse throughout her life. On the day of the delivery, she was under great duress. It was ultimately her involvement in a physically abusive relationship that led her to make the choices in this case.

**Conclusion**

Meah Virge is asking the Court to consider a variance at her sentencing on February 1, 2019. Her co-defendant is responsible for the overdose sale and by the victim's own admission, she was actively attempting suicide. Looking at a variance that does not account for the overdose, the base offense level would be 12, and with a four-level role adjustment, the resulting offense level would be 8. With two levels off for acceptance of responsibility, the total offense level would be reduced to 6. An offense level of 6 with a criminal history category of 5 warrants a recommended sentencing range of 9-15 months. If the Court is inclined to sentence Meah as though she were in a criminal history category III, her recommended range of imprisonment would be 2-8 months. Meah submits the 17 months she has currently served is an appropriate sentence and would prevent a further family crisis.

Respectfully submitted,

*/s/ Angela J. Glaser*
Angela J. Glaser (0091318)
Glaser Law Office
810 Sycamore Street
Cincinnati, Ohio 45202
Phone: (513) 621-0065
Fax: (513) 263-9065
E-mail: angelaglaserlaw@gmail.com

*/s/ Kevin M. Tierney*
Kevin M. Tierney (0072533)
**FROST BROWN TODD LLC**
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202-4182
Telephone: (513) 651-6859
ktierney@fbtlaw.com
Counsel for Defendant, Meah Virge

**CERTIFICATE OF SERVICE**

A true and accurate copy of the foregoing has been served on all parties via their counsel of record through the Court's ECF System this 25th day of January 2019.

_/s/ Angela Glaser_____
Angela Glaser (0091318)